IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 22-CR-1322-JCH |
| vs. | ) ) ) | |
| ADAM MANN, | ) ) | |
| Defendant. | ) ) ) ) | |

## THE UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OF GANG STATUS, AND RULE 404(B) NOTICE

The United States is in receipt of defendant Adam Mann ("Defendant")'s motion to exclude evidence or reference to his status as a member of the Brew Town Locos ("BTL"), Doc. 42. The United States respectfully opposes the motion. The United States further gives notice that the evidence specified below is offered, in addition to its direct relevance, for its tendency to prove motive for Defendant to possess the charged firearms per Fed. R. Evid. 404(b).

I. Factual Background.

If this matter were to proceed to a hearing, the United States expects it would adduce evidence of the following facts:

1. In 2007, Defendant pled guilty to possessing with intent to distribute at least 5 grams of crack cocaine, as well as carrying a firearm during and in relation to a drug trafficking crime, and possessing a firearm as an addict or unlawful user of a controlled substance, in federal court in case 07-CR-038. In 2009, Judge Hansen sentenced Defendant to 147 months in prison, but his sentence was later reduced to 120 months

in 2013 when the crack cocaine guidelines were changed and retroactive application was allowed.

2. In 2009, Defendant was also convicted of trafficking in a controlled substance in New Mexico state court in case D-202-CR-2007-01766.

3. In 2022, Defendant was a member of the Brew Town Locos, also known as the Brew Town Spider Locos, a violent street gang based in the North Valley of Albuquerque[1]. Because of his membership in BTL, and because of his ongoing drug trafficking behavior and association with other dangerous members of the Albuquerque drug trafficking community, Defendant had the attention of FBI Special Agent ("SA") Jordan Spaeth, a member of the FBI's Violent Gang Task Force ("VGTF"). Defendant later told SA Spaeth that he had been born into the BTL, and that it was a small part of his life.

4. On or about May 31, 2022, Defendant appeared on security cameras at 3310 Shepard Place Northeast in Albuquerque, kicking the door, demanding vehicles, and holding two handguns. That house was quite near Defendant's own residence at 3314 Shepard Place Northeast, which appeared at the time to have bullet holes from a drive-by shooting[2]. FBI agents also observed bullet holes in the driver's side of Defendant's white GMC pickup truck.

5. 3314 Shepard Place NE is located just southeast of the intersection of Carlisle Blvd. NE and Comanche Rd. NE in Albuquerque. It is only a few meters from Grisham Park,

---

[1] Albuquerque Gangland Episode 10 - Brew Town Locos:
https://www.youtube.com/watch?v=wejSbtmHXDs
[2] SA Spaeth later observed on surveillance camera footage the drive-by shooting that caused the holes in Defendant's house and truck. That shooting occurred in approximately April of 2022.

and it is within a few hundred meters (less than a quarter mile) from McKinley Middle School, Hogdin Elementary School, and Bel-Air Elementary School.

6. On June 4, 2022, Defendant started a fire (accidentally) at his house, and abandoned the house so as not to come in contact with city employees. FBI Agents later observed video of the June 4 house fire, showing someone who appeared to be Defendant leaving the residence and walking a short distance away, waiting and watching from the treeline. Shortly thereafter, smoke was observed coming from Defendant's residence, and Albuquerque Fire and Rescue ("AFR") arrived. From the video, it appears Defendant left the area on foot as AFR arrived.

7. After AFR successfully fought the house fire, they called arson investigators to determine the cause of the fire.

8. The arson investigators, during their standard fire-related investigation, came upon two handguns at the residence. Because they could not simply leave firearms and ammunition in an unsecured house in a residential neighborhood near a park and three schools, they called Albuquerque Police Department ("APD"), who sent not a detective but a Police Service Aide ("PSA") to collect the firearms and ammunition for safekeeping.

9. On June 15, 2022, SA Spaeth sought a warrant not only to obtain the firearms from APD, but to authorize *nunc pro tunc* the original seizure of the firearms from Defendant's residence, writing "I believe the APD did not obtain a warrant to seize the firearms and am requesting this court retroactively permit the seizure of the two firearms." Doc. 40-4 p. 2 n. 1. In that application, SA Spaeth faithfully set forth the circumstances under which the firearms were originally seized for safekeeping by the

APD PSA. SA Spaeth also sought authority to take DNA swabs of Defendant potentially to compare to the firearms seized from Defendant's house. United States Magistrate Judge Jerry Ritter issued the warrant.

10. SA Spaeth caught up with Defendant on July 15, 2022. It had taken some time to find Defendant because he had been avoiding his own residence to evade law enforcement. On July 11, 2022, however, VGTF agents observed Defendant at 6408 Karlson Drive NE in Albuquerque and obtained a follow-on warrant from United States Magistrate Judge Steven Yarbrough to arrest him there. SA Spaeth arrested Defendant at 6404 Karlson Drive NE and served the warrant authorization to take DNA swabs (though the FBI lab was not able to recover DNA from the pistols that could be compared).

11. At that location, after receiving written and verbal consent to search from Defendant's mother, the FBI recovered approximately $300,000 in partially-burned U.S. Currency in $50 and $100 denominations, a brown powder that field-tested positive for heroin, and the blue Polaris Razor off-road vehicle with which Defendant had been spotted several times previously. Defendant also admitted knowing he was a felon who had spent time in federal prison. Defendant was upset when he learned that he had been captured on camera holding two pistols during the May 31, 2022 door-kicking incident.

12. FBI fingerprint analysis revealed that Defendant's fingerprints were on the magazines for both pistols.

II. Evidence of Defendant's Identity as the Person Holding the Charged Firearms.

Defendant argues that gang status is irrelevant in this case because it does not relate to issues of identity, joint venture, and existence of a conspiracy. Doc. 42, pp. 2-3 (citing sources). The United States agrees that no joint venture or conspiracy is charged here. Unless Defendant is

4

willing to admit that the man holding two pistols in the May 31, 2022 surveillance footage and leaving his house alone in the June 4 footage is him, however, identity is a material fact in dispute in this case. Supporting facts tending to establish Defendant's identity in that neighborhood in that time period include:

1. the drive-by shooting captured on surveillance video in April of 2022,
2. the witness observations of bullet holes in Defendant's house and truck,
3. the blue Polaris Razor off-road vehicle first observed at Defendant's house and then also observed at his mother's house when he was arrested later, and
4. the partially-burned currency later recovered from his mother's house after the June 4, 2022 fire at his own house.

Those facts are directly relevant insofar as they tend to confirm that the person arrested at Defendant's mother's house, meaning Defendant, was the same person captured on surveillance video holding two pistols on May 31, 2022, and the same person captured on surveillance video abandoning Defendant's house and leaving the area as AFR arrived on June 4, 2022. Therefore, they are admissible pursuant to *United States v. Brown*, 200 F.3d 700, 708 (10th Cir. 1999) and *United States v. Robinson*, 978 F.2d 1554, 1562 (10th Cir. 1992).

Some of that evidence, including the evidence of Defendant fleeing the area of his home as AFR arrived to fight the fire he had started, is also directly relevant to his consciousness of guilt regarding the firearms he knew he should not have possessed. *See United States v. Chancellor*, 2010 WL 1645142, at \*3-\*4 (10th Cir. 2010) (unpublished); *United States v. Akers*, 215 F.3d 1089, 1103 (10th Cir. 2000). The evidence of Defendant's refusal to stay at his own house (instead apparently returning only to collect hundreds of thousands of dollars in partially-burned currency),

5

making himself difficult to locate, and hiding out at his mother's house is relevant for the same reason.

Defendant's argument that any relevance of such evidence is substantially outweighed by unfair prejudice, consisting of a single paragraph at Doc. 42 p. 3, is so underdeveloped as to be forfeited. *See United States v. Elliott*, 684 F. App'x 685, 687 (10th Cir. 2017) ("Forfeiture occurs when [movant] fails to timely and adequately present the argument in district court."). However, to the extent the Court finds that there is some unfair prejudice from the introduction of that direct evidence of identity, the United States does not oppose a limiting instruction specifying the purpose of the admission of the evidence and restricting the purposes for which the jury may consider it.

III. Proper Admissibility as *Res Gestae* and Other Acts Evidence.

Evidence is relevant, and therefore generally admissible, if it has any tendency to prove or disprove any material fact in dispute. *See* Fed. R. Evid. 401, 402. Relevant evidence is that which tends to "make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is not confined to that which directly establishes an element of the crime." *United States v. Gonzalez*, 110 F.3d 936, 941 (2nd Cir. 1997). Instead, to be relevant, "evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Id*.

An additional potential purpose to introduce the above-described facts at trial is as *res gestae* or intrinsic evidence. *Res gestae* or intrinsic evidence has been defined as those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense. *United States v. Sangiovanni*, No. CR 10-

6

3239 JB, 2013 WL 1655918, at *10 (D.N.M. March 20, 2013) (Browning, J.) (citing *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). The Tenth Circuit has held that other act evidence is intrinsic when the evidence of the other act and the evidence of the charged crime are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged. *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011).

As noted by the *Sangiovanni* Court, the Tenth Circuit in *United States v. McVeigh*, 153 F.3d 1166, 1203 (10th Cir. 1999) described *res gestae* evidence as "inextricably intertwined with proper evidence." See *Sangiovanni*, 2013 WL 1655918, at *10. Quoting *Hardy*, 228 F.3d at 748, the Court went on to explain:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Id*. at *11.

"But even relevant intrinsic evidence must still satisfy the requirements of Federal Rule of Evidence 403: a district judge may exclude it 'if its probative value is substantially outweighed by a danger of . . . unfair prejudice.'" *United States v. Hood*, 774 F.3d 638, 644 (10th Cir. 2014) (citing Fed. R. Evid. 403). Tenth Circuit law "*favors* admission of all relevant evidence not otherwise proscribed; thus, exclusion under this rule [403] is 'an extraordinary remedy [that] should be used sparingly.'" *Irving*, 665 F.3d at 1213 (emphasis original) (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir.1999)). Evidence is not unfairly prejudicial simply because it is damaging to the defendant's case. *United States v. Martinez*, 938 F. 2d 1078, 1082 (10th Cir. 1991). "Evidence is unfairly prejudicial if it makes a conviction more

7

likely because it provokes an emotional response from the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *Rodriguez*, 192 F.3d at 951 (emphasis added) (internal citations omitted). Furthermore, in conducting the Rule 403 balancing test, this Court must "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008) (internal quotation and citation omitted). Even if the evidence were to adversely affect the jury's attitude toward the Defendant, such prejudice does not itself "substantially" outweigh its probative value. *See Irving*, 665 F.3d at 1213-14. Whatever prejudice stems from the relevant testimony can be moderated by cautionary instructions from the Court at the time of the admission of the evidence and, if requested, again in the final charge to the jury at the close of the case. *United States v. Record*, 873 F.2d 1363, 1376 (10th Cir. 1989).

Evidence that is not directly relevant to prove a material fact in dispute, and is not *res gestae* evidence, may nevertheless be admitted if it meets the requirements of Federal Rule of Evidence 404(b). Rule 404(b) permits the admission of evidence of "prior bad acts," unless they are offered "solely to prove a defendant's criminal disposition." *United States v. Naranjo*, 710 F.2d 1465, 1467 (10th Cir. 1983). Rule 404(b) is an inclusive rule and evidence of prior bad acts is to be admitted when it proves something other than criminal propensity and bad character, even if the evidence also demonstrates propensity. *See United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (*citing United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005); and *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)). Generally, bad acts are offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b). The Tenth Circuit employs a four-part test to determine if

evidence is admissible under 404(b): (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Rule 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted. *United States v. Smalls*, 752 F.3d 1227, 1237 (10th Cir. 2014). And, like any evidence, Fed. R. Evid. 404(b) evidence must satisfy the Fed. R. Evid. 403 balancing test described above.

The United States does not offer any evidence for the purpose of showing a mere propensity to commit crime, or to possess firearms. Rather, the above described-evidence tells a plausible story that explains Defendant's motive for his illegal firearm possession: as a gang member involved in hundreds of thousands of dollars of cash business, Defendant was targeted by at least one recent drive-by shooting at his home. It makes perfect sense that he might feel the need to possess firearms, even illegally, to defend himself from such behavior. That motive is a proper Federal Rule of Evidence 404(b) reason to allow the evidence. The evidence is relevant to that purpose, and the United States does not oppose a limiting instruction about the purpose(s) for which the jury is allowed to consider any such piece of evidence. The proposed evidence therefore meets all the legal requirements set forth in *Smalls*.

IV. The Evidence Could Properly Rebut Defense Criticisms.

In addition to the direct relevance of the challenged evidence, the proper purpose of telling the inextricably intertwined story of the FBI investigation, and the proper purpose of showing Defendant's motive for the charged conduct, the challenged evidence could potentially rebut criticisms of the government set forth by the defense at trial. The United States does not know exactly how Defendant might criticize the government or the FBI investigation here more

specifically, but the defense has signaled so far that it intends to criticize the FBI. Even evidence properly excluded before trial can then be offered at trial if defense counsel open the door to such evidence by criticizing the FBI or the thoroughness of or motives for the investigation. *United States v. Alqahtani*, 2023 U.S. App. LEXIS 15458, *25-*28 (10th Cir. 2023). As with *Alqahtani*, if defense counsel choose to criticize SA Spaeth or the VGTF, one purpose of telling the true and correct story of the nature of the investigation leading to Defendant's arrest is to demonstrate the diligence and reasonable approach of the police in this case. The United States assesses that there is no reasonable basis to fear that the jury would be inflamed or irrational because of the manner in which the police chose to approach the investigation, or Defendant.

V. Conclusion.

For the above-stated reasons, the United States respectfully requests the Court deny Defendant's motion to prohibit mention of Defendant's gang status at Doc. 42. The United States further requests the Court acknowledge this filing as giving notice under Fed. R. Evid. 404(b) of motive evidence and intrinsic evidence relevant to the material facts in dispute in this case. The filing of this motion response and notice in CM/ECF caused a copy to be served on Nicole Moss, Esq., and Kelly Golightley, Esq., counsel for Defendant.

    Respectfully submitted,

    ALEXANDER M.M. UBALLEZ
    United States Attorney

    *Electronically filed on July 12, 2023*
    PAUL J. MYSLIWIEC
    Assistant U.S. Attorney
    P.O. Box 607
    Albuquerque, NM 87103
    (505) 346-7274